IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., <br><br> Plaintiff, <br><br> v. <br><br> COMCAST CORPORATION; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF NEW CASTLE COUNTY, LLC; COMCAST OF DELMARVA, INC.; COMCAST OF EASTERN SHORE, LLC; COMCAST OF CALIFORNIA II, LLC; COMCAST OF CALIFORNIA/COLORADO, LLC; COMCAST OF ARKANSAS/FLORIDA/ LOUISIANA/MINNESOTA/MISSISSIPPI/ TENNESSEE, INC.; COMCAST OF COLORADO/ PENNSYLVANIA/WEST VIRGINIA, LLC; COMCAST OF FLORIDA/ILLINOIS/MICHIGAN, INC.; COMCAST OF GARDEN STATE, L.P.; COMCAST OF HOUSTON, LLC; GEICO CORPORATION; GOVERNMENT EMPLOYEES INSURANCE COMPANY; GEICO GENERAL INSURANCE COMPANY; GEICO INDEMNITY COMPANY; GEICO CASUALTY COMPANY; XM SATELLITE RADIO HOLDINGS INC.; XM SATELLITE RADIO, INC.; XM RADIO, INC.; XM EQUIPMENT LEASING, LLC; <br><br> Defendants. | C.A. No. _____ <br><br> DEMAND FOR JURY TRIAL |

**PLAINTIFF RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'S
COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Ronald A. Katz Technology Licensing, L.P. ("Katz Technology Licensing"), states as follows for its complaint against Comcast Corporation, Comcast Cable Communications, LLC, Comcast of New Castle County, LLC, Comcast of Delmarva, Inc., Comcast of Eastern Shore, LLC, Comcast of California II, LLC, Comcast of California/Colorado, LLC, Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/

Tennessee, Inc., Comcast of Colorado/Pennsylvania/West Virginia, LLC, Comcast of Florida/Illinois/Michigan, Inc., Comcast of Garden State, L.P., Comcast of Houston, LLC, GEICO Corporation, Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, GEICO Casualty Company, XM Satellite Radio Holdings, Inc., XM Satellite Radio, Inc., XM Radio, Inc., and XM Equipment Leasing, LLC:

## THE PARTIES

1.  Plaintiff Katz Technology Licensing is a California limited partnership with its principal place of business at 9220 Sunset Boulevard, Suite 315, Los Angeles, California 90069.

2.  On information and belief, Defendant Comcast Corp. is a Pennsylvania corporation with its principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102.

3.  On information and belief, Defendant Comcast Cable Communications, LLC is (a) a Delaware corporation with its principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102, and (b) a subsidiary of Comcast Corp.

4.  On information and belief, Defendant Comcast of New Castle County, LLC is (a) a Delaware corporation with its principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102 and (b) a subsidiary of Comcast Corp.

5.  On information and belief, Defendant Comcast of Delmarva, Inc. is (a) a Delaware corporation with its principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102, and (b) a subsidiary of Comcast Corp.

6.  On information and belief, Defendant Comcast of Eastern Shore, LLC is (a) a Delaware corporation with its principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102, and (b) a subsidiary of Comcast Corp.

7.  On information and belief, Defendant Comcast of California II, LLC is (a) a Delaware corporation with its principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102, and (b) a subsidiary of Comcast Corp.

8. On information and belief, Defendant Comcast of California/Colorado, LLC is (a) a Delaware corporation with its principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102, and (b) a subsidiary of Comcast Corp.

9. On information and belief, Defendant Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, Inc. is (a) a Delaware corporation with its principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102, and (b) a subsidiary of Comcast Corp.

10. On information and belief, Defendant Comcast of Colorado/Pennsylvania/ West Virginia, LLC is (a) a Delaware corporation with its principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102, and (b) a subsidiary of Comcast Corp.

11. On information and belief, Defendant Comcast of Florida/Illinois/ Michigan, Inc. is (a) a Delaware corporation with its principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102, and (b) a subsidiary of Comcast Corp.

12. On information and belief, Defendant Comcast of Garden State, L.P. is (a) a partnership organized under the laws of the State of Delaware with its principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102, and (b) a subsidiary of Comcast Corp.

13. On information and belief, Defendant Comcast of Houston, LLC is (a) a Delaware corporation with its principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102, and (b) a subsidiary of Comcast Corp.

14. On information and belief, Defendant GEICO Corporation is a Delaware corporation with its principal place of business at 1 GEICO Plaza, Washington, D.C. 20076.

15. On information and belief, Defendant Government Employees Insurance Company is (a) a Maryland corporation with its principal place of business at 1 GEICO Plaza, Washington, D.C. 20076, and (b) a subsidiary of GEICO Corporation.

16. On information and belief, Defendant GEICO General Insurance Company is an Iowa corporation with its principal place of business at 1 GEICO Plaza, Washington, D.C. 20076, and (b) a subsidiary of GEICO Corporation.

17. On information and belief, Defendant GEICO Indemnity Company is a Maryland corporation with its principal place of business at 1 GEICO Plaza, Washington, D.C. 20076, and (b) a subsidiary of GEICO Corporation.

18. On information and belief, Defendant GEICO Casualty Company is a Maryland corporation with its principal place of business at 1 GEICO Plaza, Washington, D.C. 20076, and (b) a subsidiary of GEICO Corporation.On information and belief, Defendant XM Satellite Radio Holdings, Inc., is a Delaware corporation with its principal place of business at 1500 Eckington Place NE, Washington, D.C. 20002.

19. On information and belief, Defendant XM Satellite Radio, Inc. is (a) a Delaware corporation with its principal place of business at 1500 Eckington Place NE, Washington, D.C. 20002, and (b) a subsidiary of XM Satellite Radio Holdings, Inc.

20. On information and belief, Defendant XM Radio, Inc. is (a) a Delaware corporation with its principal place of business at 1500 Eckington Place NE, Washington, D.C. 20002, and (b) a subsidiary of XM Satellite Radio Holdings, Inc.

21. On information and belief, Defendant XM Equipment Leasing, LLC is (a) a Delaware corporation with its principal place of business at 1500 Eckington Place NE, Washington, D.C. 20002, and (b) a subsidiary of XM Satellite Radio Holdings, Inc.

## JURISDICTION AND VENUE

22. This is an action arising under the patent laws of the United States, 35 U.S.C. sections 101 *et seq*. This Court has subject matter jurisdiction over this action under 28 U.S.C. sections 1331 and 1338(a).

23. Defendants Comcast Corporation, Comcast Cable Communications, LLC, Comcast of New Castle County, LLC, Comcast of Delmarva, Inc., Comcast of Eastern Shore, LLC, Comcast of California II, LLC, Comcast of California/Colorado, LLC, Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, Inc., Comcast of Colorado/ Pennsylvania/West Virginia, LLC, Comcast of Florida/Illinois/Michigan, Inc., Comcast of

Garden State, L.P., Comcast of Houston, LLC, (collectively, the "Comcast Defendants") are subject to this Court's personal jurisdiction because, on information and belief, (1) they are organized under the laws of the State of Delaware and have designated a registered agent in this district; (2) they do substantial business in this district; (3) they operate infringing automated call processing systems that are available to their customers, including customers in this district; and/or (4) they regularly solicit business from, do business with, and derive revenue from goods and services provided to, customers in this district.

24. Defendants GEICO Corporation, Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, GEICO Casualty Company (collectively, the "GEICO" Defendants) are subject to this Court's personal jurisdiction because, on information and belief, (1) they are Delaware corporations and/or have designated a registered agent in this district; (2) they do substantial business in this district; (3) they operate infringing automated call processing systems that are available to their customers, including customers in this district; and/or (4) they regularly solicit business from, do business with, and derive revenue from goods and services provided to, customers in this district.

25. Defendants XM Satellite Radio Holdings, Inc., XM Satellite Radio, Inc., XM Radio, Inc., and XM Equipment Leasing, LLC (collectively, the "XM Defendants") are subject to this Court's personal jurisdiction because, on information and belief, they are Delaware corporations and have designated a registered agent in this district.

26. Venue is proper in this judicial district under 28 U.S.C. sections 1391(c) and 1400(b) because the Defendants are incorporated, reside, have designated a registered agent in, and/or engage in significant business activities in this district as set forth in Paragraphs 23-25 above.

## BACKGROUND

27. Ronald A. Katz ("Mr. Katz"), founder of Katz Technology Licensing, is the sole inventor of each of the patents-in-suit. Mr. Katz has been widely recognized as one of the most

prolific and successful inventors of our time, and his inventions over the last forty-plus years have been utilized by literally millions of people.

28.　In 1961, Mr. Katz co-founded Telecredit Inc. ("Telecredit"), the first company to provide online, real-time credit authorization, allowing merchants to verify checks over the telephone. Further innovations from Telecredit include the first online, real-time, point-of-sale credit verification terminal, which enabled merchants to verify checks without requiring the assistance of a live operator, and the first device that used and updated magnetically-encoded cards in automated teller machines. Multiple patents issued from these innovations, including patents co-invented by Mr. Katz.

29.　Telecredit was eventually acquired by Equifax, and has now been spun off as Certegy, a public company traded on the New York Stock Exchange. Certegy continues to provide services in the credit and check verification field established by Mr. Katz and Telecredit.

30.　Mr. Katz's inventions have not been limited to telephonic check verification. Indeed, Mr. Katz is responsible for advancements in many fields of technology. Among his most prominent and well-known innovations are those in the field of interactive call processing. Mr. Katz's inventions in that field are directed to the integration of telephonic systems with computer databases and live operator call centers to provide interactive call processing services.

31.　The first of Mr. Katz's interactive call processing patents issued on December 20, 1988. More than fifty U.S. patents have issued to Mr. Katz for his inventions in the interactive call-processing field, including each of the patents-in-suit.

32.　In 1988, Mr. Katz partnered with American Express to establish FDR Interactive Technologies, later renamed Call Interactive, to provide interactive call processing services based on Mr. Katz's inventions. The American Express business unit involved in this joint venture later became known as First Data.

33.　Early clients of Call Interactive included *The New York Times*, ABC's *Monday Night Football*, KABC Radio, CBS News, and Beatrice Foods (Hunt-Wesson division).

34. Many of these clients utilized Call Interactive technology for high-profile events. For example, CBS News hired Call Interactive to operate an interactive, real-time telephone poll to gauge viewer reaction to President George H.W. Bush's 1992 State of the Union address.

35. Mr. Katz sold his interest in Call Interactive to American Express in 1989 but continued to provide advisory services to Call Interactive until 1992. American Express later spun off the First Data business unit into a separate corporation, and with that new entity went Mr. Katz's interactive call processing patents and the Call Interactive call processing business. The former Call Interactive, now known as First Data Voice Services, continues to provide call processing solutions today.

36. In 1994, Mr. Katz formed Katz Technology Licensing, which acquired the rights to the entire interactive call processing patent portfolio, including the rights to each of the patents-in-suit, from First Data, the owner of all of the Katz interactive call processing patents at that time.

37. The marketplace has clearly recognized the value of Mr. Katz's inventions. Indeed, over one hundred fifty companies have licensed the patents-in-suit. Licensees include IBM, Hewlett-Packard, Bank of America, JPMorgan Chase, Wells Fargo, HSBC, Verizon, Sprint, Microsoft, Delta Airlines, Merck, Sears, Citibank, and the Home Shopping Network. These licensees and others acknowledge the applicability of the patents-in-suit to multiple fields of use, including but not limited to financial services call processing, automated securities transactions, automated credit card authorization services, automated wireless telecommunication services and support, automated health care services, and product and service support.

38. Each of the defendants employs the inventions of certain of the patents-in-suit. Katz Technology Licensing, through its licensing arm A2D, L.P., has repeatedly attempted to engage each defendant in licensing negotiations, but to date, none of the defendants has agreed to take a license to any of the patents-in-suit.

## THE ASSERTED PATENTS

39. On December 20, 1988, the United States Patent and Trademark Office duly and legally issued United States Patent No. 4,792,968 (the "'968 Patent") to Ronald A. Katz for an invention entitled "Statistical Analysis System for Use With Public Communication Facility." The '968 Patent expired on December 20, 2005.

40. On May 29, 1990, the United States Patent and Trademark Office duly and legally issued United States Patent No. 4,930,150 (the "'150 Patent") to Ronald A. Katz for an invention entitled "Telephonic Interface Control System." The '150 Patent expired on December 20, 2005.

41. On July 7, 1992, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,128,984 (the "'984 Patent") to Ronald A. Katz for an invention entitled "Telephone Interface Call Processing System With Call Selectivity."

42. On October 5, 1993, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,251,252 (the "'252 Patent") to Ronald A. Katz for an invention entitled "Telephone Interface Call Processing System With Call Selectivity."

43. On October 19, 1993, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,255,309 (the "'309 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System." The '309 Patent expired on December 20, 2005.

44. On September 27, 1994, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,351,285 (the "'285 Patent") to Ronald A. Katz for an invention entitled "Multiple Format Telephonic Interface Control System." The '285 Patent expired on December 20, 2005.

45. On October 1, 1996, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,561,707 (the "'707 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System." The '707 Patent expired on December 20, 2005.

46. On November 4, 1997, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,684,863 (the "'863 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System." The '863 Patent expired on December 20, 2005.

47. On September 29, 1998, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,815,551 (the "'551 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System." The '551 Patent expired on December 20, 2005.

48. On October 27, 1998, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,828,734 (the "'734 Patent") to Ronald A. Katz for an invention entitled "Telephone Interface Call Processing System With Call Selectivity."

49. On November 10, 1998, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,835,576 (the "'576 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Lottery Device." The '576 Patent expired on July 10, 2005.

50. On April 27, 1999, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,898,762 (the "'762 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System." The '762 Patent expired on December 20, 2005.

51. On June 29, 1999, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,917,893 (the "'893 Patent") to Ronald A. Katz for an invention entitled "Multiple Format Telephonic Interface Control System." The '893 Patent expired on December 20, 2005.

52. On October 26, 1999, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,974,120 (the "'120 Patent") to Ronald A. Katz for an invention entitled "Telephone Interface Call Processing System With Call Selectivity."

53.     On March 7, 2000, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,035,021 (the "'021 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System." The '021 Patent expired on December 20, 2005.

54.     On November 14, 2000, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,148,065 (the "'065 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System." The '065 Patent expired on July 10, 2005.

55.     On January 1, 2002, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,335,965 (the "'965 Patent") to Ronald A. Katz for an invention entitled "Voice-Data Telephonic Interface Control System." The '965 Patent expired on December 20, 2005.

56.     On February 19, 2002, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,349,134 (the "'134 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System." The '134 Patent expired on December 20, 2005.

57.     On July 23, 2002, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,424,703 (the "'703 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Lottery System." The '703 Patent expired on July 10, 2005.

58.     On August 13, 2002, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,434,223 (the "'223 Patent") to Ronald A. Katz for an invention entitled "Telephone Interface Call Processing System With Call Selectivity." The '223 Patent expired on July 10, 2005.

59.     On January 28, 2003, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,512,415 (the "'415 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Game Control System." The '415 Patent expired on July 10, 2005.

60. On January 13, 2004, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,678,360 (the "'360 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System." The '360 Patent expired on July 10, 2005.

## FIRST CLAIM
### (Patent Infringement by the Comcast Defendants)

61. Katz Technology Licensing realleges and incorporates by reference Paragraphs 1-60 of this Complaint as if fully set forth herein.

62. The Comcast Defendants provide digital cable, broadband Internet and digital phone services to subscribers throughout the United States.

63. On information and belief, the Comcast Defendants use infringing call processing systems to offer automated customer service, pay-per-view ordering, voicemail functions, and technical support to their customers. Using an automated system, in some instances in connection with operators, the Comcast Defendants allow their customers to access information about their accounts, access voicemail messages, make payments, transfer or discontinue service, order pay-per-view entertainment, and perform various other functions.

64. Katz Technology Licensing is the sole holder of the entire right, title, and interest in the '021, '065, '120, '134, '150, '223, '252, '285, '309, '360, '415, '551, '703, '707, '734, '762, '863, '893, '968, and '984 Patents.

65. On information and belief, in their automated operations described in Paragraph 63 (collectively, the "Accused Comcast Services"), the Comcast Defendants have been and are now infringing, actively inducing the infringement of, or contributing to the infringement of one or more claims of the patents identified in Paragraph 64 of this Complaint by making, using, offering to sell, or selling the Accused Comcast Services.

66. On information and belief, the Comcast Defendants continue to infringe, actively induce the infringement of, and contribute to the infringement of one or more claims of the '120,

'252, '734, and '984 Patents by making, using, offering to sell, or selling the Accused Comcast Services.

67.    The Comcast Defendants' infringement of the patents identified in Paragraph 64 of this Complaint has been and is willful.

68.    The Comcast Defendants' infringement has caused and will continue to cause Katz Technology Licensing irreparable harm unless enjoined by this Court. Katz Technology Licensing has no adequate remedy at law.

**SECOND CLAIM**
**(Patent Infringement by the GEICO Defendants)**

69.    Katz Technology Licensing realleges and incorporates by reference Paragraphs 1-60 of this Complaint as if fully set forth herein.

70.    The GEICO Defendants provide insurance products and services throughout the United States.

71.    On information and belief, the GEICO Defendants use infringing call processing systems to offer automated customer service to their customers. Using an automated system, in some instances in connection with operators, the GEICO Defendants allow their customers to access information about their policies, make payments, order new identification cards, establish or change their personal identification numbers, verify insurance coverage, and perform various other functions.

72.    Katz Technology Licensing is the sole holder of the entire right, title, and interest in the '065, '120, '134, '150, '223, '252, '285, '360, '551, '576, '703, '707, '734, '863, '893, '965, '968 and '984 Patents.

73.    On information and belief, in their automated customer service operations described in Paragraph 71 (collectively, the "Accused GEICO Services"), the GEICO Defendants have been and are now infringing, actively inducing the infringement of, or

contributing to the infringement of one or more claims of the patents identified in Paragraph 72 of this Complaint by making, using, offering to sell, or selling the Accused GEICO Services.

74.   On information and belief, the GEICO Defendants continue to infringe, actively induce the infringement of, and contribute to the infringement of one or more claims of the '120, '252, '734 and '984 Patents by making, using, offering to sell, or selling the Accused GEICO Services.

75.   The GEICO Defendants' infringement of the patents identified in Paragraph 72 of this Complaint has been and is willful.

76.   The GEICO Defendants' infringement has caused and will continue to cause Katz Technology Licensing irreparable harm unless enjoined by this Court. Katz Technology Licensing has no adequate remedy at law.

### THIRD CLAIM
### (Patent Infringement by the XM Defendants)

77.   Katz Technology Licensing realleges and incorporates by reference Paragraphs 1-60 of this Complaint as if fully set forth herein.

78.   The XM Defendants provide satellite radio subscription services.

79.   On information and belief, the XM Defendants use infringing call processing systems to offer automated customer service to their customers. Using an automated system, in some instances in connection with operators, the XM Defendants allow their customers to access account information, sign up for new service, activate a radio, send a radio activation signal, make a payment for an account, manage an account, access technical support, and perform various other functions.

80.   Katz Technology Licensing is the sole holder of the entire right, title, and interest in the '065, '120, '134, '150, '223, '252, '285, '360, '551, '703, '707, '734, '762, '863, '893, '965, and '984 Patents.

81.     On information and belief, in their automated customer service operations described in Paragraph 79 (collectively, the "Accused XM Services"), the XM Defendants have been and are now infringing, actively inducing the infringement of, or contributing to the infringement of one or more claims of the patents identified in Paragraph 80 of this Complaint by making, using, offering to sell, or selling the Accused XM Services.

82.     On information and belief, the XM Defendants continue to infringe, actively induce the infringement of, and contribute to the infringement of one or more claims of the '120, '252, '734 and '984 Patents by making, using, offering to sell, or selling the Accused XM Services.

83.     The XM Defendants' infringement of the patents identified in Paragraph 80 of this Complaint has been and is willful.

84.     The XM Defendants' infringement has caused and will continue to cause Katz Technology Licensing irreparable harm unless enjoined by this Court. Katz Technology Licensing has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Ronald A. Katz Technology Licensing, L.P., respectfully requests that this Court enter judgment in its favor and against the defendants and grant the following relief:

1.     Adjudge that the Comcast Defendants have been and are infringing one or more claims of the patents identified in Paragraph 64 of this Complaint by offering the Accused Comcast Services;

2.     Adjudge that the Comcast Defendants' infringement has been and is willful;

3.     Enter an order, pursuant to 35 U.S.C. § 283, temporarily, preliminarily, and permanently enjoining the Comcast Defendants, and all persons in active concert or

participation with them, from any further acts of infringement, contributory infringement, or inducement of infringement of the '120, '252, '734, and '984 Patents;

      4.    Order an accounting for damages resulting from the Comcast Defendants' infringement of the patents identified in Paragraph 64 of this Complaint.

      5.    Enter an order, pursuant to 35 U.S.C. § 284, awarding to Katz Technology Licensing damages adequate to compensate Katz Technology Licensing for the Comcast Defendants' infringement, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest;

      6.    Enter an order, pursuant to 35 U.S.C. § 284, and based on the Comcast Defendants' willful infringement, trebling all damages awarded to Katz Technology Licensing and against the Comcast Defendants;

      7.    Adjudge that the GEICO Defendants have been and are infringing one or more claims of the patents identified in Paragraph 72 of this Complaint by offering the Accused GEICO Services;

      8.    Adjudge that the GEICO Defendants' infringement has been and is willful;

      9.    Enter an order, pursuant to 35 U.S.C. § 283, temporarily, preliminarily, and permanently enjoining the GEICO Defendants, and all persons in active concert or participation with them, from any further acts of infringement, contributory infringement, or inducement of infringement of the '120, '252, '734 and '984 Patents;

      10.    Order an accounting for damages resulting from the GEICO Defendants' infringement of the patents identified in Paragraph 72 of this Complaint;

      11.    Enter an order, pursuant to 35 U.S.C. § 284, awarding to Katz Technology Licensing damages adequate to compensate Katz Technology Licensing for the GEICO Defendants' infringement, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest;

12. Enter an order, pursuant to 35 U.S.C. § 284, and based on the GEICO Defendants' willful infringement, trebling all damages awarded to Katz Technology Licensing and against the GEICO Defendants;

13. Adjudge that the XM Defendants have been and are infringing one or more claims of the patents identified in Paragraph 80 of this Complaint by offering the Accused XM Services;

14. Adjudge that the XM Defendants' infringement has been and is willful;

15. Enter an order, pursuant to 35 U.S.C. § 283, temporarily, preliminarily, and permanently enjoining the XM Defendants, and all persons in active concert or participation with them, from any further acts of infringement, contributory infringement, or inducement of infringement of the '120, '252, '734, and '984 Patents;

16. Order an accounting for damages resulting from the XM Defendants' infringement of the patents identified in Paragraph 80 of this Complaint;

17. Enter an order, pursuant to 35 U.S.C. § 284, awarding to Katz Technology Licensing damages adequate to compensate Katz Technology Licensing for the XM Defendants' infringement, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest;

18. Enter an order, pursuant to 35 U.S.C. § 284, and based on the XM Defendants' willful infringement, trebling all damages awarded to Katz Technology Licensing and against the XM Defendants;

19. Enter an order, pursuant to 35 U.S.C. § 285, finding that this is an exceptional case and awarding to Katz Technology Licensing its reasonable attorneys' fees incurred in this action; and

20. Award such other relief as the Court may deem appropriate and just under the circumstances.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and the Seventh Amendment to the Constitution of the United States, Plaintiff demands a trial by jury of all claims and all issues triable as of right by jury in this action.

BOUCHARD MARGULES & FRIEDLANDER, P.A.

By *[signature: John M. Seaman]*
Andre G. Bouchard (I.D. No. 2504)
John M. Seaman (I.D. No. 3863)
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
Telephone: 302.573.3500
abouchard@bmf-law.com
jseaman@bmf-law.com

*Attorneys for Plaintiff*
*Ronald A. Katz Technology Licensing, L.P.*

OF COUNSEL:

Robert T. Haslam
Andrew C. Byrnes
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA 94025-3506
650.324.7000

Michael K. Plimack
Dale A. Rice
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104-2878
415.772.6000

Dated: June 7, 2007